# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL LABOR RELATIONS AUTHORITY, *et al.*, <br><br> Defendants. | Civil Action No. 19-142 (JEB) |

## MEMORANDUM OPINION

The American Federation of Government Employees and one of its local chapters sought clarity from the Federal Labor Relations Authority about whether certain employees at two federal agencies were properly considered within or without the union's bargaining purview. When the FLRA's initial determination was mostly favorable to AFGE, the federal agencies sought review of that decision within the Authority. Likely concerned with a potentially adverse result, AFGE and the local chapter got cold feet and attempted to withdraw their original petitions. The FLRA first determined that withdrawal was improper; it then reversed some of their gains on the merits. AFGE responded by bringing suit in this Court, alleging multiple violations of the Administrative Procedure Act. Defendants now move to dismiss, maintaining that this Court lacks subject-matter jurisdiction because the agency action at issue is unreviewable and also positing that AFGE has not stated a claim. Agreeing with the former point, the Court will grant the Motion to Dismiss without reaching the latter.

**I.      Background**

The FLRA is an independent agency that oversees labor-management relations for the federal government. See 5 U.S.C. §§ 7101–7135. At issue here are four agency decisions concerning so-called "appropriate-unit determinations." The Federal Service Labor-Management Relations Statute provides that the FLRA "shall determine the appropriateness of any [bargaining] unit." 5 U.S.C. § 7112(a). That is, it must ensure that employees are appropriately included or excluded from representation by a union. Specifically, it deems a unit appropriate "only if the determination will ensure a clear and identifiable community of interest among the employees in the unit and will promote effective dealings with, and efficiency of, the operations of the agency involved." Id.

In this case, AFGE and its Local 12 — which the Court will refer to jointly as the "Unions" — sought appropriate-unit determinations from the FLRA. The Unions disagreed with two federal agencies — the Department of Veterans Affairs (VA) and the Department of Labor (DOL) — about whether certain employees were within the bargaining units they represented. They consequently petitioned FLRA regional offices to clarify the employees' status. See ECF No. 1 (AFGE VA Complaint), ¶ 17; ECF No. 1, No. 19-665 (Local 12 DOL Complaint), ¶ 16.

The regional directors issued their decisions in March and July of 2017, largely siding with the Unions in finding that the disputed employees should — for the most part — properly be considered as included in the bargaining units. See VA Compl., ¶¶ 21–22; DOL Compl., ¶¶ 20–21. VA and DOL each responded by filing with the FLRA applications for review of those decisions. See VA Compl., ¶ 23; DOL Compl., ¶ 22. Both applications for review were granted, although the Authority "deferred action on the merits until a later date." VA Compl., ¶ 26; DOL Compl., ¶ 26. After the applications were granted but before the FLRA issued a merits decision

2

on either, the Unions sought to withdraw entirely their unit-clarification petitions — that is, those petitions that were then effectively pending on appeal. See VA Compl., ¶ 27; DOL Compl., ¶ 28.

The FLRA did not respond specifically to the withdrawal requests. See VA Compl., ¶¶ 28, 34; DOL Compl., ¶ 30, 41. Instead, it issued decisions on the merits several months later. It initially found that "nothing in the Authority's Regulations permits the Union to withdraw its petition at this late stage of the proceedings." U.S. Department of Veterans Affairs, Kansas City VA Medical Center, Kansas City, Missouri, 70 FLRA 465, 466 (2018) (VA I); U.S. Department of Labor, 70 FLRA 452, 453 (2018) (DOL I). Rather, the Authority observed that "once a proceeding has reached a certain stage, [it] has institutional interests in resolving the dispute." VA I, 70 FLRA at 466; DOL I, 70 FLRA at 453. In addition, it reasoned that the affected agencies, rather than the Unions, had filed the applications for review, and those agencies had not expressed any wish to withdraw their applications. If it were to grant the withdrawal, it would be permitting the "Union[s] to unilaterally terminate proceedings." DOL I, 70 FLRA at 453; see also VA I, 70 FLRA at 467. On the merits, FLRA next found that the regional directors' decisions were inconsistent with portions of the statute excluding from the Unions' purview certain employees "engaged in personnel work" and certain "confidential employee[s]." VA I, 70 FLRA at 467–69 (citing 5 U.S.C. § 7112(b)(3)); DOL I, 70 FLRA at 454–56 (citing 5 U.S.C. § 7112(b)(2)). It consequently directed the regional directors to clarify the affected bargaining units to exempt those employees. See VA I, 70 FLRA at 469; DOL I, 70 FLRA at 456.

The FLRA subsequently denied the Unions' motions for reconsideration. See U.S. Department of Veterans Affairs, Kansas City VA Medical Center, Kansas City, Missouri, 70 FLRA 960, 962 (2018) (VA II); U.S. Department of Labor, 70 FLRA 953, 957 (2018) (DOL II). Those motions argued that the Authority had erred in denying their withdrawal requests and had,

3

*inter alia*, therefore impermissibly issued advisory opinions. See VA Compl., ¶¶ 36–37; DOL Compl., ¶¶ 43–44. The FLRA ruled that the withdrawal requests did not moot the controversy and that it had thus not issued advisory opinions. It based that finding on the timing of the requests and the observation that the agencies, not the Unions, had sought the appeal. It also determined that there was a reasonable expectation that the disputes would recur, thus defeating mootness. See VA II, 70 FLRA at 961 & n.20, 962; DOL II, 70 FLRA at 954 & n.23, 955.

The Unions then filed two suits in this Court, which were consolidated. See Minute Order of May 3, 2019. They allege multiple violations of the APA, including that FLRA issued advisory opinions in contravention of its own regulations, was arbitrary and capricious in failing to enumerate a defined withdrawal process, and impermissibly repealed without notice and comment its regulation forbidding the issuance of advisory opinions. See VA Compl., ¶¶ 40–42, 44–48, 50–52; DOL Compl., ¶¶ 48–50, 52–54, 59–60. The Unions request that this Court "[v]acat[e]" and "[d]eclar[e] . . . void" the four decisions at issue and "[o]rder[] the Authority to grant" their "withdrawal of [their] petition[s]." VA Compl. at 8–9; DOL Compl. at 10.

Defendants have now moved to dismiss. See ECF No. 11. They contend both that this Court lacks subject-matter jurisdiction and that the Unions have not stated a claim. The Court need consider only the first point.

## II.   Legal Standard

The Government has moved to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. In considering the Motion, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted). The

Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference "unsupported by the facts set out in the complaint." Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted).

Under Rule 12(b)(1), a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court also has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).

## III. Analysis

The Court's analysis begins and ends with jurisdiction. It first analyzes Plaintiff's argument under § 7123 of the Statute, and it next addresses its alternative position regarding jurisdiction under Leedom v. Kyne, 358 U.S. 184 (1958).

### A. Statutory Arguments

Section 7123 of the Statute governs judicial review. It provides that "[a]ny person aggrieved by any final order of the Authority . . . may . . . institute an action for judicial review" in either the court of appeals in which "the person resides or transacts business" or in the D.C. Circuit. See 5 U.S.C. § 7123(a). The provision, however, excepts orders the FLRA issues pertaining to an award by an arbitrator or — relevant here — "involving an appropriate unit determination." Id. § 7123(a)(1), (2). The D.C. Circuit has been clear that this provision bars any federal court — including district courts — from reviewing orders on this topic. See Ass'n

5

of Civilian Technicians, Inc. v. Fed. Labor Relations Auth., 283 F.3d 339, 341 (D.C. Cir. 2002) (ACT) ("Because FLRA section 7123 'precludes judicial review' of appropriate unit determinations, the district court properly held that it lacked jurisdiction" to review one.); see also id. (holding that APA cannot supply a hook for review since it "expressly provides that its general review provisions . . . do not apply where statutes preclude judicial review") (internal quotation marks and citation omitted).

The Unions offer several rejoinders to resist this plain reading of the statutory provision, but none is persuasive. They first raise two points that are slight variants of each other. Plaintiff cites Griffth v. FLRA, 842 F.2d 487 (D.C. Cir. 1988), where the D.C. Circuit found the claims to be outside the scope of the § 7123(a) bar. See ECF No. 13 (Pl. Opp.) at 13. In addition, more generally, they contend that they are not seeking review of the FLRA's substantive determinations but rather of a set of collateral issues revolving around whether the Authority's orders were improper advisory opinions in contravention of its regulations. Id. at 13, 15. As such, in their view, the statutory bar to review does not apply.

As an initial matter, before delving into these specific arguments, one conclusion is fundamental: Even if they are correct about either of the preceding points such that these FLRA orders are reviewable as excepted from the statutory bar, the Unions offer no reason that they would be reviewable in this court as opposed to a court of appeals. Indeed, the D.C. Circuit has been clear that to the extent the Statute allows for judicial review of FLRA action at all, that must occur in a court of appeals. See ACT, 283 F.3d at 341–42 ("We cannot imagine that Congress, having vested in courts of appeals exclusive jurisdiction to review all Authority decisions except those relating to appropriate unit determinations, would have intended that such determinations could nevertheless be reviewed by district courts."). That alone should dispose of the Unions'

position on this score. As such, the Court need proceed no further. Nevertheless, in an abundance of caution, it addresses Plaintiff's specific arguments and, for the reasons that follow, has some doubt that review is appropriate in any court.

The Unions' reliance on the D.C. Circuit's decision in Griffith is misplaced. As a preliminary note, the court there addressed § 7123(a)'s bar to review, although that decision involved § 7123(a)(1) — the preclusion of review of FLRA decisions involving the award of an arbitrator — rather than § 7123(a)(2) — at issue in this case and pertaining to decisions involving appropriate-unit determinations. The Circuit held reviewable the petitioner's constitutional claim alleging a violation of due process where the Authority had failed to remand a matter to an arbitrator she had requested. See Griffith, 842 F.2d at 491, 494. The court's reasoning, however, turned entirely on the status of the claim as constitutional. The decision explained that the "maxim that congressional preclusion of judicial review must be clear and convincing applies in a particularly rigorous fashion . . . when constitutional claims are at stake." Id. at 494 (internal citation marks and quotations omitted). Because "the statute itself [did] not specifically preclude review of constitutional claims" and the legislative history evinced no congressional intent to do so, the Circuit reached the merits of the due-process claim. Id. at 495. The Unions' suit here is avowedly not a constitutional one. The Court, consequently, finds it difficult to see how it would extend Griffith to find their claims reviewable.

Facially more promising but ultimately unavailing is the Unions' second, more general point about whether their claims are collateral ones that are, consequently, not covered by the statutory bar. As an initial matter, the text of the Statute does not distinguish between direct and collateral claims. On the contrary, its text is broad, barring review of "an order under § 7112 . . . involving an appropriate[-]unit determination." 5 U.S.C. § 7123(a)(2) (emphasis added). The

Unions' claims — about whether the FLRA has issued an advisory opinion because it did not allow them to unilaterally withdraw their appeals — undoubtedly "involved" an appropriate-unit determination. Even if the statutory language were to be read not to bar collateral challenges, it is not clear that the Unions' claims would so qualify. They attempt, ultimately, to undo the agency's decision. See VA Compl. at 8–9 (requesting that this Court "[v]acat[e]" and "[d]eclar[e] . . . void" the four decisions at issue); DOL Compl. at 10 (same); see also Jarkesy v. SEC, 803 F.3d 9, 23 (D.C. Cir. 2015) (finding that challenge to "procedure" for agency decisionmaking was not "collateral to a scheme of administrative and judicial review" because it was "at bottom, an attempt to reverse the agency's decisions denying . . . benefits claims") (citations and internal quotation marks omitted). In addition, although the Unions put at issue the FLRA's procedures regarding withdrawal of a petition, the Authority's handling of that issue necessarily implicates the substance of appropriate-unit determinations, including how and when the agency will weigh in to adjudicate parties' rights.

  B.  *Leedom* Jurisdiction

AFGE raises one final argument as to why jurisdiction exists here. Specifically, it maintains that Leedom, 358 U.S. 184, allows review. See Pl. Opp. at 15. "Even where Congress is understood generally to have precluded review," there is "an implicit but narrow exception," announced in Leedom, "closely paralleling the historic origins of judicial review of agency actions in excess of jurisdiction." Griffith, 842 F.2d at 492. For a court to "exercise jurisdiction pursuant to Leedom[,] . . . the agency's alleged conduct must be contrary to a specific statutory prohibition that is both clear and mandatory, and the party aggrieved must have no other meaningful and adequate mean of vindicating its statutory rights." Am. Fed. of Gov't Employees, Local 2510 v. FLRA, 453 F.3d 500, 506 (D.C. Cir. 2006) (internal quotation marks,

citations, and brackets omitted). It is an "exception . . . intended to be of extremely limited scope," properly "confine[d]" to "agency error so extreme that one may view it as jurisdictional or nearly so." Griffith, 842 F.2d at 493; see also Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (explaining that it "cannot be overstated" that the invocation of Leedom jurisdiction "is extraordinary" because it is "extremely narrow in scope"); ACT, 283 F.3d at 344 (labeling use of Leedom jurisdiction "extraordinary") (citation omitted); Dep't of Justice v. FLRA, 981 F.2d 1339, 1342–43 (D.C. Cir. 1993) (reasoning that Leedom followed from "extraordinary circumstances" and should be interpreted as having "very limited scope" with "nearly insurmountable limitations"). If Leedom did provide a basis for jurisdiction in this case, the proper court would be this one, since it "is premised on the original federal subject matter jurisdiction of the district courts." Local 2510, 453 F.3d at 506 (citation omitted).

This case is not, however, one of the rare ones in which Leedom jurisdiction lies. The Authority has not violated any express statutory directive, nor do the Unions point to one. They contend only that it acted contrary to a provision of its enabling statute requiring that any rule be issued or repealed in conformity with the Administrative Procedure Act. See Pl. Opp. at 17–18. Here, they maintain, the Authority contravened that provision because it repealed, without notice and comment, its regulation prohibiting its issuance of advisory opinions. Id. That argument does not cut the mustard.

Even if the Authority were to have violated one of its regulations in issuing the opinions that the Unions seek to challenge, Leedom "does not confer jurisdiction merely because FLRA made an error of law"; rather, the Authority "must have acted without statutory authority." Dep't of Interior v. FLRA, 1 F.3d 1059, 1062 (D.C. Cir. 1993). Its decisions here did not contravene

9

any plain statutory directive. In addition, whether the agency issued an advisory opinion as prohibited by its regulations in the first instance turns on whether its declining to allow the withdrawal was permissible. The Unions point to no statutory provision barring the FLRA from deeming withdrawal improper in this instance. Without that, it is not clear that the agency made any error of law, let alone one "so extreme that one may view it as jurisdictional or nearly so." Griffith, 842 F.2d at 493.

## IV. Conclusion

For these reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 2, 2019